IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:10-CR-71-D
No. 7:13-CV-123-D

| | | |
|---|---|---|
| CIPRIANO DIAZ-GALIANA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

On July 1, 2013, Cipriano Diaz-Galiana ("Diaz-Galiana") filed a corrected motion to vacate, set aside, or correct his 120-month sentence pursuant to 28 U.S.C. § 2255 [D.E. 75]. On August 15, 2013, the government moved to dismiss Diaz-Galiana's section 2255 motion or, alternatively, for summary judgment [D.E. 77]. As explained below, the court grants the government's motion to dismiss.

I.

On June 16, 2010, a federal grand jury in the Eastern District of North Carolina indicted Diaz-Galiana and charged him with illegal reentry by an aggravated felon, in violation of 8 U.S.C. § 1326 (count 1), and with possession of firearms and ammunition by an illegal alien, in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2) (count two) [D.E. 13]. On January 10, 2011, Diaz-Galiana pleaded guilty, pursuant to a written plea agreement, to count one of the indictment. [D.E. 38] ¶ 2(a); see Arraignment Tr. [D.E. 65] 27. On August 3, 2011, the court held a sentencing hearing and calculated Diaz-Galiana's advisory Guideline range to be 30 to 37 months. See Sentencing Tr. [D.E. 64] 10. After considering the evidence presented and the arguments of counsel, the court

upwardly departed under sections 4A1.3 and 5K2.21 of the Sentencing Guidelines and calculated Diaz-Galiana's advisory Guideline range to be 100 to 125 months. See id. 30–37. The court then considered the section 3553(a) factors and sentenced Diaz-Galiana to 120 months' imprisonment. See id. 45. The court also issued a detailed order explaining Diaz-Galiana's sentence. See [D.E. 55]. Pursuant to the plea agreement, the court dismissed the remaining count in Diaz-Galiana's indictment. See Sentencing Tr. 46.

Diaz-Galiana appealed his sentence, arguing that the court abused its discretion in upwardly departing under the Sentencing Guidelines. See United States v. Diaz-Galiana, 483 F. App'x 840, 841 (4th Cir. 2012) (per curiam) (unpublished). The Fourth Circuit affirmed the sentence, finding that the record contained ample evidence to support the court's judgment. Id. at 842.

On June 20, 2013, Diaz-Galiana filed a section 2255 motion [D.E. 72], and on July 1, 2013 he filed a corrected section 2255 motion [D.E. 75]. Diaz-Galiana asserts the following claims: (1) the court abused its discretion by imposing a sentence based on uncharged or dismissed conduct, see [D.E. 75] 4; (2) the government breached the plea agreement by asking the court to consider conduct underlying a dismissed charge as part of its sentence, see id. 5; (3) his trial counsel provided ineffective assistance by failing to challenge facts alleged in the Presentence Report ("PSR"), see id. 7; (4) the court entered an illegal sentence based on the previously stated claims, see id. 8; and (5) his appellate counsel provided ineffective assistance by failing to make the arguments Diaz-Galiana asserts in this action. See id. 4, 6, 7, 8.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010),

2

aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions drawn from the facts. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In reviewing a section 2255 motion to vacate, the court is not limited to the motion itself. The court also may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

As for Diaz-Galiana's claims of ineffective assistance of counsel, "[t]he Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (quotation omitted); see Strickland v. Washington, 466 U.S. 668, 687–91 (1984). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding. See, e.g., Missouri v. Frye, 132 S. Ct. 1399, 1405 (2012); Lafler v. Cooper, 132 S. Ct. 1376, 1385 (2012); Smith v. Murray, 477 U.S. 527, 535–36 (1986). "[S]entencing is a critical stage of trial at which a defendant is entitled to effective assistance of counsel, and a sentence imposed without effective assistance must be vacated and reimposed to permit facts in mitigation of punishment to be fully and freely developed." United States v. Breckenridge, 93 F.3d 132, 135 (4th Cir. 1996); see Glover v. United States, 531 U.S. 198, 203–04 (2001).

3

An individual alleging ineffective assistance of counsel must demonstrate that counsel's representation fell below an objective standard of reasonableness and that counsel's deficient performance caused the individual prejudice. See Strickland, 466 U.S. at 687; see also Frye, 132 S. Ct. at 1409–10; Lafler, 132 S. Ct. at 1384–85; Hill v. Lockhart, 474 U.S. 52, 57–58 (1985); Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc). When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. A party must also show that counsel's deficient performance prejudiced the party. Id. at 687. A party does so by showing that there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." Id. at 694.

In his section 2255 motion, Diaz-Galiana claims that the court abused its discretion in upwardly departing from the advisory Guideline range. See [D.E. 75] 4, 8. In response, the government asks the court to enforce the appellate waiver in Diaz-Galiana's plea agreement and dismiss this claim. See [D.E. 78] 4. In his plea agreement, Diaz-Galiana agreed:

> [t]o waive knowingly and expressly all rights . . . to appeal whatever sentence is imposed, including any issues that relate to the establishment of the advisory Guideline range, reserving only the right to appeal from a sentence in excess of the applicable advisory Guideline range that is established at sentencing, and further to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea.

[D.E. 38] ¶ 2(c).

Before considering the effect of Diaz-Galiana's appellate waiver, the court first ensures that

4

the waiver was valid. To be valid, the appellate waiver must have been knowing, intelligent, and voluntary. See, e.g., United States v. Thornsbury, 670 F.3d 532, 537 (4th Cir. 2012); United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005). "Generally, if a district court questions a defendant regarding the waiver of appellate rights during the Rule 11 colloquy and the record indicates that the defendant understood the full significance of the waiver, the waiver is valid." Thornsbury, 670 F.3d at 537; see United States v. Copeland, 707 F.3d 522, 528 (4th Cir. 2013). Here, Diaz-Galiana's Rule 11 colloquy reflects that Diaz-Galiana discussed the entire agreement with his attorney, understood each of its terms, and entered into the agreement knowingly and intelligently. See Arraignment Tr. 23–29. The court read aloud the entire appellate waiver and confirmed that Diaz-Galiana understood the appellate and other rights he was waiving. Id. 23–24. The court may rely on Diaz-Galiana's sworn statements made during the Rule 11 colloquy to conclude that Diaz-Galiana made the waiver knowingly and voluntarily. United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005). Thus, Diaz-Galiana's waiver was valid.

As for the scope of the waiver, Diaz-Galiana waived his right "to appeal whatever sentence is imposed, including any issues that relate to the establishment of the advisory Guideline range." [D.E. 38] ¶ 2(c). Diaz-Galiana reserved only his "right to appeal from a sentence in excess of the applicable advisory Guideline range that is established at sentencing." Id. The appellate waiver applied to direct appeals of his sentence and to post-conviction proceedings under section 2255. Id.; see Lemaster, 403 F.3d at 220. Diaz-Galiana received a sentence of 120 months' imprisonment, which was below the advisory Guideline range calculated at sentencing. See Sentencing Tr. 37, 45. Accordingly, the court enforces Diaz-Galiana's appellate waiver with respect to his claim that the court abused its discretion in upwardly departing.

Alternatively, the court did not abuse its discretion in upwardly departing under sections

5

4A1.3 and 5K2.21 of the Guidelines. The Fourth Circuit concluded that Diaz-Galiana's criminal history category III substantially underrepresented the seriousness of Diaz-Galiana's extensive criminal conduct, which included uncounted convictions for accessory after the fact to murder, drug trafficking, and carrying a concealed weapon. Diaz-Galiana, 483 F. App'x at 842; see [D.E. 55] 8. The Fourth Circuit also concluded that this court appropriately found that Diaz-Galiana was nearly certain to commit other crimes, given that he had been detained, prosecuted, and deported or removed from the United States 16 times over a 35 year period. Diaz-Galiana, 483 F. App'x at 842; see [D.E. 55] 8. Finally, the Fourth Circuit determined that this court properly considered the dismissed weapons charge in sentencing Diaz-Galiana, given that police found Diaz-Galiana in possession of seven firearms and over 1,000 rounds of ammunition when arrested, and that this conduct had not entered into the determination of the applicable advisory Guideline range. Diaz-Galiana, 483 F. App'x at 842; see [D.E. 55] 10. Because Diaz-Galiana's advisory Guideline range failed to account for the seriousness of his extensive criminal history, for the near certain likelihood that he would commit future crimes, and for the conduct underlying the dismissed charge, the court did not abuse its discretion in upwardly departing and imposing a sentence of 120 months' imprisonment. Moreover, and in any event, Diaz-Galiana cannot relitigate claims that were rejected on appeal in this section 2255 proceeding. See United States v. Dyess, No. 11-7355, 2013 WL 5071770, at *3 (4th Cir. Sept. 16, 2013); United States v. Linder, 552 F.3d 391, 396–97 (4th Cir. 2009); United States v. Roane, 378 F.3d 382, 396 n.7 (4th Cir. 2004); Boeckenhaupt v. United States, 537 F.3d 1182, 1183 (4th Cir. 1976) (per curiam).

Diaz-Galiana also alleges that the government breached the plea agreement when it asked the court to consider the conduct underlying the dismissed weapons charge in sentencing him. See [D.E. 75] 5; Sentencing Tr. 15–17, 26–27. Because this claim relates to the establishment of Diaz-

6

Galiana's advisory Guideline range, the appellate waiver bars it. See [D.E. 38] ¶ 2(c). Moreover, and in any event, the government did not breach the plea agreement. The plea agreement provided that the government "reserve[d] the right to make a sentence recommendation." Id. ¶ 4(b). It also provided that the court had not yet determined Diaz-Galiana's sentence, and that in fashioning that sentence, the court would "take into account, [without being] bound by, the applicable United States Sentencing Guidelines." Id. ¶ 3(c). In that regard, the Guidelines specifically authorize the court to consider uncharged and dismissed conduct at sentencing. See U.S.S.G. §§ 4A1.3(a)(2), 5K2.21. Accordingly, Diaz-Galiana's claim that the government breached the plea agreement fails. Cf. United States v. Cook, 41 F. App'x 629, 630 (4th Cir. 2002) (per curiam) (unpublished) (finding that the government did not breach the plea agreement where the government agreed to make no recommendation as to a specific sentence and then disputed defendant's assertion regarding the extent of the upward departure to which he was subject).

Alternatively, the claim fails because Diaz-Galiana has not plausibly alleged prejudice. See, e.g., United States v. Duran-Santibanez, 464 F. App'x 122, 123 (4th Cir. 2012) (per curiam) (unpublished); United States v. Lyons, 205 F. App'x 120, 124 n.5 (4th Cir. 2006) (per curiam) (unpublished). The court upwardly departed under section 5K2.21 because it concluded that possession of seven firearms and over 1,000 rounds of ammunition by an illegal alien was very serious conduct that the advisory Guideline range before departure did not take into account. See [D.E. 55] 11. The court did not rely on the government's statements at sentencing to reach this conclusion. See Sentencing Tr. 14–15; United States v. Washington, 146 F.3d 219, 221–22 (4th Cir. 1998). Because Diaz-Galiana cannot show that the court would have imposed a lower sentence but for the alleged breach, his claim fails.

7

Next, Diaz-Galiana raises three ineffective assistance of counsel claims. He argues that his trial counsel provided ineffective assistance by (1) failing to challenge the factual predicates contained in the PSR, specifically, that Diaz-Galiana possessed firearms and ammunition at the time of his arrest, see [D.E. 75] 7; [D.E. 75-1] 3–4; and (2) deceiving him as to the impact of his plea and the likely sentence that he would receive. See [D.E. 80] 1–2. He also argues that his appellate counsel provided ineffective assistance by failing to make the arguments Diaz-Galiana asserts in this action. See [D.E. 75] 4, 6, 7, 8.

These claims fail. As for the first claim, Diaz-Galiana has failed to plausibly allege counsels' deficient performance. His attorneys' decision not to object to the PSR is a tactical one entitled to deference. See Strickland, 466 U.S. at 689. Alternatively, Diaz-Galiana has not plausibly alleged prejudice. Essentially, Diaz-Galiana claims that had his attorneys properly argued that he should not have been charged with possession of firearms and ammunition by an illegal alien, the court would not have been able to consider the conduct underlying the charge as grounds for an upward departure. See [D.E. 75-1] 4. As discussed, however, the Guidelines specifically authorize the court to consider dismissed and uncharged conduct that did not enter into the determination of the applicable advisory Guideline range. U.S.S.G. § 5K2.21; see United States v. Frierson, 115 F. App'x 607, 608 (4th Cir. 2004) (per curiam) (unpublished). Accordingly, Diaz-Galiana's first claim of ineffective assistance of counsel fails.

Diaz-Galiana also asserts that his trial attorneys deceived him regarding the impact of his plea and the likely sentence that he would receive. See [D.E. 80] 1–2. The record belies this claim. At Diaz-Galiana's Rule 11 hearing, the court advised Diaz-Galiana of the charges against him, the maximum potential penalties associated with his conviction, the consequences of pleading guilty, the fact that the court would determine Diaz-Galiana's sentence, and that any inaccuracy in counsel's

8

estimate of his sentence would not allow Diaz-Galiana to withdraw his guilty plea. See Arraignment Tr. 6–10, 19–26. Thus, the court's Rule 11 colloquy cured any potential prejudice arising from counsels' alleged deception. See United States v. Foster, 68 F.3d 86, 87–88 (4th Cir. 1995); United States v. Craig, 985 F.2d 175, 179–80 (4th Cir. 1993) (per curiam); United States v. Lambey, 974 F.2d 1389, 1391–96 (4th Cir. 1992) (en banc). Moreover, after the court informed Diaz-Galiana of the potential penalties he faced, Diaz-Galiana stated, under oath, that he understood the penalties associated with the offense to which he was pleading guilty, see Arraignment Tr. 19–21, the authority of the court to impose an appropriate sentence, see id. 22, that his attorney went over the entire plea agreement with him, see id. 23, and that no one had made a promise to him as to what his sentence would be. See id. 25. The court must dismiss claims that rely on allegations contradicting sworn statements at the Rule 11 hearing. See Lemaster, 403 F.3d at 221–22. Thus, Diaz-Galiana's second claim of ineffective assistance of counsel fails.

Finally, Diaz-Galiana asserts that his appellate counsel provided ineffective assistance by failing to raise the claims Diaz-Galiana now asserts in his section 2255 motion. This claim fails for several reasons. First, Diaz-Galiana's appellate counsel did challenge the upward departure on appeal. See Diaz-Galiana, 483 F. App'x at 841. Second, because the government did not breach the plea agreement, Diaz-Galiana's appellate counsel appropriately decided not to argue that it did. See, e.g., Sharpe v. Bell, 593 F.3d 372, 383 (4th Cir. 2010). Finally, to the extent Diaz-Galiana alleges that his counsel should have raised a particular argument on appeal, he is challenging his attorney's tactics. Such tactical decisions are entitled to deference. See Strickland, 466 U.S. at 689. Thus, Diaz-Galiana's third claim of ineffective assistance of counsel fails.

After reviewing the claims presented in Diaz-Galiana's section 2255 motion, reasonable jurists would not find the court's treatment of any of Diaz-Galiana's claims debatable or wrong, and

9

none of the issues are adequate to deserve encouragement to proceed further. Thus, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c).

II.

In sum, the court GRANTS the government's motion to dismiss [D.E. 77] and DISMISSES Diaz-Galiana's section 2255 motions [D.E. 72, 75]. The court also DENIES Diaz-Galiana's motion for documents/transcripts [D.E. 70] and motion for leave to proceed in forma pauperis [D.E. 71]. The court DENIES a certificate of appealability. The clerk shall close the case.

SO ORDERED. This **22** day of October 2013.

JAMES C. DEVER III
Chief United States District Judge